UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Switchback Group, Inc., | ) |
| Plaintiff, | ) Case No. 1:14-Cv-1022 |
| vs. | ) Judge John R. Adams |
| John Zweigle, dba Design Services, | ) Jury Trial Demanded |
| Defendant. | ) |

## Amended Complaint

For its amended complaint against defendant John Zweigle, dba Design Services, ("Zweigle"), plaintiff Switchback Group, Inc. ("Switchback") states:

## Summary of Case

1. Switchback is a designer and manufacturer of sophisticated automated packaging systems headquartered in Richfield, Ohio.

2. Switchback's customers use its automated packaging systems to package and label a wide variety of goods, such as bottles, cans, food products, and automotive parts, in a wide variety of industries.

3. Zweigle, who does business as "Design Services" from time to time, formerly was retained by Switchback as a full-time independent contractor. Zweigle is now a Switchback competitor who is deceiving the marketplace, and hijacking Switchback's goodwill, by falsely representing that he is responsible for Switchback's automated packaging system installations at facilities of Switchback's customers.

{5247653:}    1

4. Switchback brings this action to stop Zweigle from continuing to deceptively take credit for Switchback's work, breaching his contract with Switchback, interfering with Switchback's existing and prospective economic advantages, and to obtain compensation for the harm that he has caused.

## The Parties

5. Switchback is an Ohio corporation with a principal place of business in Richfield, Ohio.

6. Zweigle is an individual who, upon information and belief, currently resides in California.

7. Upon information and belief, "Design Services" is an unincorporated sole proprietorship under which Zweigle does business from time to time. Upon information and belief, Zweigle is the owner and controlling force of Design Services and is personally liable for the acts and omissions committed in the name of "Design Services." For convenience, Zweigle and Design Services collectively are referred to herein as "Zweigle."

## Jurisdiction and Venue

8. This Court has subject matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. § 1331 because the claims arise under federal law.

9. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.

10. This Court has personal jurisdiction over Zweigle because, among other things, he has sold and marketed services in Ohio (and continues to do so); he has entered into contracts and otherwise transacted business in Ohio and with Ohio

businesses, including contracting with Switchback to provide services; through his contractual breaches, tortious conduct, and deceptive actions, he has unjustly derived money and intangible rights from Ohio individuals or businesses; he has caused harm to Switchback in Ohio through his contractual breaches and his deceptive and tortious conduct, where such actions have occurred in Ohio and beyond; and, upon information and belief, he has continuous and systematic contacts with Ohio.

11. Over many years, including the years spanning his engagement by Switchback, Zweigle has continuously and systematically transacted business in Ohio by regularly travelling to Ohio and by transacting business in this state.

12. In particular, and without limiting the foregoing, Zweigle entered into an arm's-length independent contractor relationship with Switchback, an Ohio corporation having its principal place of business in Richfield, Ohio, and the parties negotiated and agreed to amend the terms of their independent contractual relationship while Zweigle was at Switchback's Richfield, Ohio, facility in 2012.

13. During the course of the party's contractual relationship, Zweigle regularly supplied services in Ohio. On numerous occasions, Zweigle travelled to Switchback's Richfield, Ohio, facility to perform services for and on behalf of Switchback and its customers, both before and after the parties negotiated and entered into the 2012 amendment to their contractual relationship in Ohio.

14. On multiple occasions, Zweigle met with Switchback customers at Switchback's Richfield, Ohio, facility, and on others, he Zweigle met with Switchback customers and the Customer's facilities in Ohio.

15. Zweigle also transacted business with other Ohio individuals and companies for, among other things, transportation, lodging and meals.

16. Having solicited business from, and performed business for, Switchback and its customers in Ohio, Zweigle caused injury to Switchback in Ohio by his acts and omissions outside of the state by engaging in the tortious conduct alleged herein. Moreover, Zweigle engaged in a persistent course of conduct and derived substantial revenue from goods used or consumed, and services he rendered in, this state.

17. Zweigle also caused tortious injury to Switchback in Ohio by his acts and omissions outside of the state with the purpose of injuring Switchback and with the reasonable expectation that Switchback would suffer injury in Ohio as a result. Upon information and belief, Zweigle engaged in acts of false advertising, deceptive trade practices, and unfair competition, by which he knowingly and intentionally caused harm to Switchback and by which he was unjustly enriched by diverting business opportunities (and thus revenue and profit) from Switchback to his personal gain with actual knowledge that Switchback would suffer injury in Ohio as a result thereof.

18. Venue is proper under 28 U.S.C. § 1391 because, among other things, a substantial part of the events or omissions giving rise to Switchback's claims occurred in this judicial district and a substantial part of the evidence is present in this judicial district. In particular, and without limiting the foregoing, venue is proper in this judicial district because a substantial part of the events and omissions giving rise to Switchback's claims occurred in Ohio, as alleged herein. Venue also is proper in this judicial district because a substantial part of the property that is the subject of this action is situated in

Ohio, as alleged herein. Venue also is proper in this judicial district because the Court has personal jurisdiction over Zweigle with respect to Switchback's claims, as alleged herein, and the exercise of such jurisdiction over him is reasonable.

## Relevant Facts

### I. Switchback

19. Switchback is a highly trusted name in the packaging industry with a well-earned reputation for designing, manufacturing, integrating and installing innovative, high-quality and reliable automated packaging systems for the corrugated and chipboard box, tray and carton industries.

20. Switchback's automated packaging systems include a wide variety of cartoners, case packers, carton and trayformers, pouching/sachet machines, bottle and can labelers, carton closers and related systems.

21. Using computer-operated motors, conveyors and arms, Switchback's packaging systems automate the entire packaging process, allowing its customers to greatly reduce labor costs and speed up their manufacturing processes.

22. Switchback provides its customers "turnkey" service, with Switchback handling the entire process of designing, building, and then installing automated packaging systems in its customers' facilities, so that—at the end—its customers need only turn a key to start using Switchback's systems.

23. Because of the large capital investment needed to buy a single automated packaging system, and because downtime on production lines is extremely costly to a customer's bottom line, Switchback's proven track record of delivering high quality and

reliable automated packaging systems that it stands behind is critical to its continued success and longevity in this market.

## II. Zweigle's Bad Acts

24. Around 2007, Switchback met Zweigle in California. At that time, Zweigle owned a business called MDG Packaging Solutions that was struggling for customers.

25. After discussing several different business arrangements, Switchback retained Zweigle to perform design and related services as an independent contractor.

26. Under the terms of his agreement, Zweigle agreed to wind down his MDG Packaging Solutions business after he completed the remaining work in progress, after which he was to work exclusively for Switchback on a full-time basis as a mechanical designer. In addition to his primary responsibility for designing and engineering automated packaging systems for Switchback, Zweigle responsibilities also included support, sales and marketing functions.

27. Zweigle further agreed that, going forward, all of his design work, drawings, and customer and business records would be the property of Switchback and would be maintained at Switchback's Ohio offices.

28. In exchange for Zweigle's agreement to wind down MDG Packaging Solutions to work exclusively for it on a full-time basis, Switchback agreed to pay Zweigle a retention of $80,000 per year with a bonus of two percent of the net sales price for products he designed. Switchback also agreed to pay for Zweigle's cell phone and one-half of Zweigle's family medical insurance premiums, and to reimburse any travel and other incidental expenses that Zweigle incurred while working for Switchback.

29. After Zweigle started, Switchback discovered that he was breaching the terms of his agreement with Switchback by, among other things, competing with Switchback by performing design and development work for third parties and usurping business opportunities for himself that rightfully belonged to Switchback.

30. Rather than ending its engagement of Zweigle immediately, Switchback gave him another chance. Following an in-person meeting at Switchback's Ohio facility in 2012, the parties reaffirmed their existing agreement, with several notable changes. In particular, Zweigle agreed to specifically notify Switchback of any additional business opportunities, and Switchback agreed to increase his annual retention to $115,000 in exchange for eliminating his bonus.

31. Since then, Switchback has learned that Zweigle has continued to breach the terms of his agreement with Switchback.

32. For example, Switchback has learned that Zweigle had not worked exclusively for Switchback but instead competed head-to-head with Switchback offering and selling competing products and services to existing Switchback customers.

33. Zweigle also did not notify Switchback of all additional business opportunities, but instead usurped, or attempted to usurp, those business opportunities for himself without disclosing them to Switchback.

34. Zweigle also has misrepresented (and continues to misrepresent) to the market, and to potential and actual Switchback customers, that he designed, built, and installed various automated packaging systems on behalf of "Design Services," when in

reality Switchback designed, built and installed the automated packaging systems in question for its customers.

35. For example, Zweigle posted pictures of automated packaging systems that Switchback designed, built and installed for its customers on his personal website at www.design-serv.com, thereby falsely and deceptively representing that Zweigle—and not Switchback—was chosen by each of the customers, and that he made the sales to those customers, warrantied the depicted automated packaging systems, and designed, built, and installed them.

36. As another example, Zweigle posted numerous videos on both his website and on YouTube that show the operation of automated packaging systems that Switchback designed, built and installed for its customers, thereby falsely and deceptively representing that Zweigle—and not Switchback—was chosen by each of the customers, and that he made the sales to those customers, warrantied the depicted automated packaging systems, and designed, built, and installed them.

37. Zweigle also has distributed sales and marketing collateral that copy, in whole or in part, and are otherwise confusingly similar to, the sales and marketing collateral Switchback uses to market, sell and promote its goods and services in ways that create a significant likelihood that customers will be confused as to the affiliation, connection, and association of Zweigle with Switchback and the origin, sponsorship, and approval of his goods, services and commercial activities.

38. Switchback also recently learned from a potential customer that Switchback was in head-to-head competition with Zweigle for a contract to design, build and install

an automated case packing system. Although Zweigle was under contract with Switchback at that time, he did not inform Switchback of that potential business opportunity or seek its consent to purse that business on his own behalf.

39. Upon information and belief, Zweigle also has made numerous false and deceptive representations to one or more of Switchback's customers, including that Switchback knew that he was performing services and selling goods in direct competition with it and had granted him express permission to so do.

40. Zweigle's misrepresentations are material to the marketplace. In choosing an automated packaging system supplier, customers need assurances that its supplier has a proven capability of delivering high-performance and reliable automated packaging systems and that the supplier has the infrastructure to fully warranty and quickly respond to any problems with its systems. It therefore is important that a supplier has an established track record of and reputation for designing, building and installing high-quality, reliable automated packaging systems. Switchback has such a track record and reputation, which Zweigle is wrongly appropriating through his misrepresentations to the market.

41. Zweigle's false and deceptive actions, implications, omissions, and statements have a strong tendency to mislead, deceive, or confuse at least a substantial portion of customers and, upon information and belief, have actually misled, deceived, or confused customers.

42. Neither Switchback nor, upon information and belief, any of its customers consented to Zweigle taking and posting pictures and videos showing automated

packaging systems designed, built and installed by Switchback and used by its customers in their manufacturing facilities on his website and on YouTube.

43. As a result of Zweigle's contractual breaches and his false, deceptive and unauthorized actions, implications, omissions, and statements, Zweigle has caused (and continues to cause) monetary damage to Switchback, and he has caused (and continues to cause) irreparable harm to Switchback's reputation and goodwill.

### Count One
*False Advertising under the Lanham Act*
*15 U.S.C. § 1125(a)(1)(B)*

44. Switchback incorporates by reference all preceding allegations in this complaint as if fully rewritten herein.

45. Zweigle has falsely advertised under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) by using words, images, videos, false, misleading and confusing descriptions of fact, and false or misleading representations of fact in commercial advertising and promotions that misrepresent the nature, characteristics, and qualities of his and Switchback's goods, services, and commercial activities.

46. Zweigle's false advertising has damaged Switchback in an amount to be determined at trial and have caused it serious and ongoing irreparable harm, which will continue unless Zweigle's false advertising is enjoined by this Court.

### Count Two
*Ohio's Deceptive Trade Practices Act*
*Ohio Rev. Code § 4165.01 et seq.*

47. Switchback incorporates by reference all preceding allegations in this complaint as if fully rewritten herein.

48. Zweigle has violated Ohio's Deceptive Trade Practices Act by, among other things: (a) passing off Switchback's goods and services as his own; (b) causing a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of his and Switchback's goods and services; (c) causing likelihood of confusion or misunderstanding as to the affiliation, connection, or association with, or certification by him or Switchback; (d) representing that his goods and services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have; (e) representing that his goods and services are of a particular standard, quality, or grade, when they are not; and (f) advertising his goods and services with intent not to sell them as advertised.

49. Zweigle's deceptive trade practices have damaged Switchback in an amount to be determined at trial and have caused it serious and ongoing irreparable harm, which will continue unless Zweigle's deceptive trade practices are enjoined by this Court.

**Count Three**
*Unfair Competition under the Lanham Act and Common Law*
*15 U.S.C. § 1125(a)(1)(A)*

50. Switchback incorporates by reference all preceding allegations in this complaint as if fully rewritten herein.

51. By engaging in the acts and omissions set forth herein, Zweigle has, and continues to, cause confusion, mistake, and deception as to his affiliation, connection and association with Switchback, and have, and continue to, cause confusion, mistake and deception as to the origin, sponsorship and approval of his goods, services and activities.

52. Zweigle's unlawful, deceptive, and confusing activities thus constitute unfair competition under the Lanham Act and common law.

53. Zweigle's unfair competition has damaged Switchback in an amount to be determined at trial and have caused it serious and ongoing irreparable harm, which will continue unless Zweigle's unfair competition is enjoined by this Court.

### Count Four
*Unjust Enrichment*

54. Switchback incorporates by reference all preceding allegations in this complaint as if fully rewritten herein.

55. Through his unlawful, deceptive, and confusing activities, Zweigle has obtained benefits, including sales and goodwill, that rightfully belong to Switchback.

56. Zweigle has not compensated Switchback for the benefits that he wrongfully obtained, despite justice and equity requiring him to do so.

57. Zweigle has unjustly enriched itself by obtaining and retaining the ill-gotten benefits of his unlawful, deceptive, and confusing activities.

58. Zweigle's receipt and retention of the benefits of his unlawful, deceptive, and confusing activities is unjust enrichment.

59. Zweigle's unjust enrichment has damaged Switchback in an amount to be determined at trial and have caused it serious and ongoing irreparable harm, which will continue unless Zweigle's unjust enrichment is enjoined by this Court.

### Count Five
*Breach of Contract*

60. Switchback incorporates by reference all preceding allegations in this complaint as if fully rewritten herein.

61. One or more contracts between Switchback and Zweigle required Zweigle to work exclusively for Switchback on a full-time basis, notify Switchback of any additional business opportunities and agree that all of his design work, drawings, and customer and business records would be the property of Switchback and would be maintained at Switchback's Ohio offices.

62. Zweigle has materially breach one or more contracts with Switchback by, among other acts and omissions, not working exclusively for Switchback on a full time basis, not notifying Switchback of additional business opportunities, and by using design work, drawings and customer and business records owned by Switchback without Switchback's knowledge or consent.

63. As a direct and proximate result of Zweigle's contractual breaches, Switchback has been damaged in an amount to be determined at trial.

## Count Six
*Interference with Existing and Prospective Economic Advantage*

64. Switchback incorporates by reference all preceding allegations in this complaint as if fully rewritten herein.

65. Switchback has, and has had, an expectancy in continuing advantageous economic relationships with current and prospective purchasers of its goods and services.

66. These relationships contained the probability of future economic benefit in the form of ongoing sales, service and support.

67. Had Zweigle refrained from engaging in the unlawful and wrongful conduct described herein, there is a substantial probability that Switchback's customers would

have engaged in further business with Switchback instead of engaging in business with Zweigle or other third parties.

68. Zweigle was aware of these economic relationships and intended to interfere with and disrupt them by, among other things, not working exclusively for Switchback on a full-time basis, using documents and information belonging to Switchback without its permission or consent and by making false and deceptive statements and actions.

69. In the alternative, Zweigle knew or should have known about the economic relationships between Switchback and its current and prospective customers described above, and knew or should have known that these relationships would be interfered with and disrupted if Zweigle failed to act with reasonable care. Zweigle failed to act with reasonable care, and instead engaged in the conduct described above.

70. Zweigle's conduct constitutes a violation of numerous state and federal statutes and of common law, including as enumerated herein.

71. As a result of Zweigle's acts and omissions, the above-described relationships have been actually disrupted, causing certain current and prospective customers to contract with third parties including Zweigle instead of Switchback.

72. As a direct and proximate result of Zweigle's actions, Switchback has suffered economic harm, including but not limited to loss of profits from sales to current and potential customers. Zweigle's wrongful conduct was a substantial factor in causing this harm to Switchback, which will continue unless Zweigle's interfering conduct is enjoined by this Court.

73. Zweigle's interference with Switchback's prospective economic advantages with its current and future customers was willful, malicious, oppressive, and in conscious disregard of Switchback's rights. Switchback therefore is entitled to an award of punitive damages to punish Zweigle's wrongful conduct and to deter future wrongful conduct.

## Count Seven
*Declaratory Judgment*

74. Switchback incorporates by reference all preceding allegations in this complaint as if fully rewritten herein.

75. In 2007, Zweigle and Switchback agreed in writing that Switchback would retain his services as an independent contractor, not as an employee. Because Zweigle was not being retained as an employee, the parties further agreed in writing that all of Zweigle's work product would be Switchback's property.

76. Consistent with his status as an independent contractor, Switchback did not direct or manage Zweigle's day-to-day activities or provide specific instruction as to how he was to carry out providing his services. Zweigle's performance was not evaluated as those of a Switchback employee. Nor did Switchback provide Zweigle training on how he was to carry out his services. Instead, Zweigle had primary control over how he performed the tasks for which he was retained. Zweigle was responsible for providing the workspace, tools and facilities necessary for performing services on behalf of Switchback, he determined the times at which he performed those services, and the order and sequence he followed to perform those services.

77. Zweigle also was in control of the business aspects of his relationship with Switchback, and, as a result, he was capable of realizing a profit or loss with respect to the

services he provided. For example, he was responsible for providing, and had a substantial investment in, his workspace and the tools and facilities necessary for performing his services. Moreover, Switchback did not pay Zweigle personally for the services he provided, but instead remitted payment for those services against invoices submitted by Zweigle under the name of his business, Design Services. Furthermore, the parties did not contemplate that Zweigle's relationship with Switchback would be permanent.

78. Despite having been an independent contractor during the entirety of his engagement with Switchback, Zweigle claimed for the first time after Switchback filed this action that he should have been classified as an employee and threatened to initiate proceedings against Switchback on that basis.

79. As such, a real and justiciable case and controversy exists between Zweigle and Switchback regarding whether Zweigle was properly regarded as an independent contractor, as Zweigle maintained during the time he was retained by Switchback, or whether Zweigle should have been regarded as an employee during that time, as he contends now that his engagement with Switchback had concluded.

80. In accordance with the Declaratory Judgment Act, 28 U.S.C. § 2201, Switchback requests that the Court declare that Zweigle was an independent contractor, and not an employee, of Switchback during the term of his engagement.

### Prayer for Relief

WHEREFORE, Switchback prays that this Court enter judgment in its favor and against Zweigle and grant it the following relief:

(A) Compensatory damages in an amount to be determined at trial.

(B)  An accounting and disgorgement of Zweigle's ill-gotten profits.

(C)  Preliminary and permanent injunctive relief enjoining Zweigle and all those in active concert or participation with him from:

depicting, displaying, distributing, disseminating or otherwise publishing in any medium pictures, photographs, video or other depictions of automated packaging systems designed, built, installed, offered or sold by Switchback;

directly or indirectly soliciting or engaging in any business dealings with any of Switchback's actual and potential customers in competition with Switchback;

directly or indirectly using any design work, drawings, and customer and business records from the period during which he was retained by Switchback;

engaging in any conduct that tends falsely to represent, or is likely to confuse, mislead or deceive purchasers, Switchback's customers, or other members of the public to believe that Zweigle is connected with Switchback or is sponsored, approved, or licensed by Switchback or is in some way affiliated with Switchback; and,

otherwise engaging in any acts of false advertising, deceptive trade practices, unfair competition, unjust enrichment, intentional or tortious interference, and breach of contract with Switchback.

(D)  A declaration that declare that Zweigle was an independent contractor, and not an employee, of Switchback during the term of his engagement.

(E)  Punitive damages.

(F)  Attorneys' fees.

(G)  Pre-judgment and post-judgment interest.

(H)  Costs of the action.

(I)  Such other and further relief as allowed at law or in equity that the Court deems to be appropriate and to which Switchback is entitled.

Dated: December 8, 2014

/s/ David T. Movius
David T. Movius (OH 0070132)
Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 | f 216.348.5474
 dmovius@mcdonaldhopkins.com
 mcavanagh@mcdonaldhopkins.com

*Counsel for Switchback Group, Inc.*

## Jury Demand

Switchback Group, Inc. hereby demands a jury trial for all issues so triable.

          / s/ David T. Movius
          *Counsel for Switchback Group, Inc.*

## Certificate of Service

I hereby certify that a copy of the foregoing *Amended Complaint* was served by e-mail and U.S. Mail on December 8, 2014, on the following:

>Ben Nicholson
>   *Ben.Nicholson@mccormickbarstow.com*
>McCormick Barstow, LLP
>7647 North Fresno Street
>P.O. Box 28912
>Fresno, CA 93729-8912


>   /s/ David T. Movius
>*Counsel for Switchback Group, Inc.*