UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Switchback Group, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:14-cv-1022 |
| | ) | |
| vs. | ) | Judge John R. Adams |
| | ) | |
| John Zweigle, dba Design Services, | ) | **MEMORANDUM OF POINTS** |
| | ) | **AND AUTHORITIES IN SUPPORT** |
| Defendant. | ) | **OF DEFENDANT JOHN** |
| | ) | **ZWEIGLE'S MOTION TO** |
| | ) | **DISMISS FOR LACK OF** |
| | ) | **JURISDICTION OVER THE** |
| | ) | **PERSON** |

## I.     INTRODUCTION

### A.     Issue To Be Decided.

Whether There Is Personal Jurisdiction Over Defendant John Zweigle In Ohio.

### B.     Summary of Argument.

The subject lawsuit arises out of the breakdown of the business relationship between defendant John Zweigle (a California resident) and plaintiff Switchback Group, Inc. (an Ohio corporation). For more than six years, Mr. Zweigle performed design and related services for Switchback from his home office in California. In early 2014, the relationship between Switchback and Mr. Zweigle ended.

By way of this lawsuit, Switchback is alleging that Mr. Zweigle is unfairly and deceptively competing against it in the wake of their breakup.  To the extent the court ever sees the substance of this dispute, it is critical that there is no non-compete agreement or any other limitation on Mr. Zweigle's right to freely compete in the American marketplace.

More to the point for instant purposes, however, is that Mr. Zweigle is a California resident who performed his work for Switchback from California with the exception of a few sporadic trips to Ohio. Now Switchback, a multimillion dollar corporation, is attempting to manufacture jurisdiction in Ohio in order to hale Mr. Zweigle into court here and to take advantage of his inferior resources and assets. That is, while Switchback is complaining about Mr. Zweigle's conduct since Mr. Zweigle left Switchback, Mr. Zweigle has submitted a declaration establishing that he has had no contact with Ohio since leaving Switchback. Even prior to that, his contacts with Ohio were minimal and such conduct is not at issue in this lawsuit. As such, there simply are insufficient contacts between Mr. Zweigle's alleged conduct in this dispute and Ohio to confer personal jurisdiction over Mr. Zweigle in Ohio.

For these reasons and all those discussed below, Mr. Zweigle prays that the Court will dismiss this action based on the lack of personal jurisdiction.

## II.     BACKGROUND FACTS

### A.     The Original Complaint

On May 9, 2014, Switchgroup Group, Inc. ("Switchback") filed the original complaint in this matter against John Zweigle, dba Design Services ("Zweigle"). The complaint alleged that Switchback is a designer and manufacturer of sophisticated automated packaging systems headquartered in Richfield, Ohio. Request for Judicial Notice ("RJN"), ¶ 1, Exh. "A" [Complaint ¶ 1]. Switchback alleged its customers use its automated packaging systems to package and label a wide variety of goods, such as bottles, cans, food products, and automotive parts, in a wide variety of industries. *Id*. at ¶ 2. Switchback further alleged that Zweigle, who does business as "Design Services" from time to time, formerly was retained by Switchback as a full time independent contractor. *Id*. at ¶ 3. Plaintiff further alleged that Zweigle is now a Switchback competitor who is

2

"deceiving the marketplace, and hijacking Switchback's goodwill, by falsely representing that he is responsible for Switchback's automated packaging system installations at facilities of Switchback's customer."  *Id.*

Thus, Switchback alleges that it "brings this action to stop Zweigle from continuing to deceptively take credit for Switchback's work, breaching his contract with Switchback, interfering with Switchback's existing and prospective economic advantages, and to obtain compensation for the harm that he has caused.  *Id*. at ¶ 4.

Specifically, plaintiffs alleged that, around 2007, Switchback "met Zweigle in California." *Id*. at  ¶ 17.  At that time, plaintiff alleges Zweigle owned a business called MDG Packaging Solutions that was struggling for customers.  *Id*.  After discussing several different business arrangements, Switchback retained Zweigle to perform design and related services.  Plaintiffs alleged that Zweigle agreed to wind down his business and to "work exclusively for Switchback on a full time basis as a mechanical designer." *Id*. at ¶ 19.  In addition to his primary responsibility for designing and engineering automated packaging systems for Switchback, plaintiff alleged Zweigle's responsibilities included support, sales and marketing functions.  Zweigle was to receive a salary of $80,000 per year with a bonus of 2% of the net sales price for products he designed.  *Id*. at ¶ 20.

Switchback alleges that, after Zweigle started, it discovered that he was breaching the terms of his agreement by, among other things, competing with Switchback by performing design and development work for third parties and usurping business opportunities for himself that rightly belonged to Switchback.  *Id*. at ¶ 22.  Rather than terminate Zweigle immediately, Switchback alleged it gave him another chance.  In particular, plaintiff alleged that following "an in person meeting at Switchback's Ohio facility in 2012, the parties reaffirmed their existing agreement with several changes." *Id.* at ¶ 23.  Switchback alleged that Zweigle agreed to notify Switchback of any

3

additional business opportunities and Switchback agreed to increase his annual salary to $115,000 in exchange for eliminating his bonus.  *Id.*   Since the time of this meeting, Switchback alleged it has learned that Zweigle has continued to breach the terms of his agreement with Switchback.  *Id.* at ¶ 24.

Specifically, Switchback alleged it has learned that Zweigle has competed head to head with Switchback for customers, that Zweigle has not notified Switchback of all additional business opportunities, that Zweigle has misrepresented to the marketplace that he designed, built and installed various automated packaging systems, that Zweigle has posted pictures of automated packaging systems that Switchback designed on his personal website, that Zweigle has posted numerous videos on his personal website and on Youtube showing the operation of automated packaging systems that Switchback designed, that Zweigle was in head-to-head competition with Switchback for a contract to design, build and install an automated case packaging system and that Zweigle made numerous false and deceptive representations to one or more of Switchback's customers, including that Switchback knew that he was performing services and selling goods in direct competition with it and had granted him express permission to do so.  *Id.* at ¶¶ 25-31.

Based on the foregoing, the original complaint purported to state causes of action for False Advertising under the Lanham Act, a violation of Ohio's Deceptive Trade Practices Act, Unfair Competition under the Lanham Act and common law, Unjust Enrichment, Breach of Contract and Interference with Existing and Prospective and Economic Advantage.

### B.    The First Amended Complaint

After a series of extensions to respond, on December 8, 2014, Switchback filed an amended complaint asserting the same substantive allegations and causes of action but inserting numerous facts that are supposedly relevant to jurisdiction.  See First Amended Complaint ("FAC"), ¶¶ 10-17.

In particular, Switchback alleges that this Court has personal jurisdiction over Zweigle because, among other things, he has sold and marketed services in Ohio (and continues to do so); he has entered into contracts and otherwise transacted business in Ohio and with Ohio businesses, including contracting with Switchback to provide services; through his contractual breaches, tortious conduct and deceptive actions, he has unjustly derived money and intangible rights from Ohio individuals or businesses; he has caused harm to Switchback in Ohio through his contractual breaches and his deceptive and tortious conduct, where such actions have occurred in Ohio and beyond; and, upon information and belief, he has continuous and systematic contacts with Ohio.  (FAC, ¶ 10.) Switchback further alleges that, over many years, including the years spanning his engagement by Switchback, Zweigle has continuously and systematically transacted business in Ohio by regularly traveling to Ohio and by transacting business in this state.  *Id.* at ¶ 11.  In particular, Switchback alleges that Zweigle entered into an arms-length independent contractor relationship with Switchback, an Ohio corporation having its principal place of business in Richfield, Ohio, and the parties negotiated and agreed to amend the terms of their independent contractual relationship while Zweigle was at Switchback's Richfield, Ohio facility in 2012.  *Id.* at ¶ 12.

During the course of the parties' contractual relationship, Switchback alleges Zweigle regularly supplied services in Ohio.  On numerous occasions, Switchback alleges Zweigle traveled to Switchback's Richfield, Ohio facility to perform services for and on behalf of Switchback and its customers, both before and after the parties negotiated and entered into the 2012 amendment to their contractual relationship in Ohio.  *Id.* at ¶ 13.  Switchback further alleges that, on multiple occasions, Zweigle met with Switchback customers at Switchback's Richfield, Ohio facility and on others, Zweigle met with Switchback customers at the customers' facilities in Ohio.  Switchback further

5

alleges that Zweigle also transacted business with other Ohio individuals and companies for, among other things, transportation, lodging and meals.

Having solicited business from, and performed business for, Switchback and its customers in Ohio, Switchback alleges Zweigle caused injury to Switchback in Ohio by his acts and omissions outside of the state by engaging in the tortious conduct alleged herein.  Switchback further alleges that Zweigle engaged in a persistent course of conduct and derived substantial revenue from goods used or consumed, and services he rendered in Ohio.  Switchback further alleges that Zweigle caused tortious injury to Switchback in Ohio by his acts and omissions outside of the state with the purpose of injuring Switchback and with the reasonable expectation that Switchback would suffer injury in Ohio as a result.  Switchback alleges that Zweigle engaged in acts of false advertising, deceptive trade practices, and unfair competition, by which he knowingly and intentionally caused harm to Switchback and by which he was unjustly enriched by diverting business opportunities (and thus revenue and profit) from Switchback to his personal gain with actual knowledge that Switchback would suffer injury in Ohio.

## C.    **Declaration of Zweigle**

At all relevant times, Mr. Zweigle was a California resident.  He has never been an Ohio resident.  Mr. Zweigle has been in the design and manufacturing business for over thirty-five (35) years. Prior to 2007, he owned and operated his own design and manufacturing business and worked for various design and manufacturing businesses in California and Texas. At no time prior to 2007 did he solicit any business or perform any services in Ohio on behalf of his own company or any of the companies that he worked for. In fact, other than changing planes during a layover, prior to 2007, he had never been to Ohio.  (See Defendant's Declaration ¶3.)

6

In approximately September or October of 2007, Zweigle met with the principals of Switchback Group, Inc. at his California facility.  As a result of this meeting, Switchback retained Mr. Zweigle to perform design and related services for Switchback and its customers.  (See Defendant's Declaration ¶4.)  Between late 2007 and late 2012, Zweigle performed services for Switchback.  The vast majority of these services were provided by Mr. Zweigle from his home office in California.  During this time, Zweigle traveled to Switchback's Ohio facility on average approximately 2-3 times per year to work on Switchback machines. (See Defendant's Declaration ¶6.)  As part of the agreement, Zweigle continued operating his business.

In late 2012, both Switchback and Zweigle wanted to amend the agreement. Zweigle met with Switchback management in Ohio in December 2012 for the purpose of amending the agreement. This was the last time Zweigle was physically present in Ohio. Switchback agreed to increase Zweigle's compensation. He also agreed that Zweigle could continue to operate outside of Switchback as Design Services. (See Defendant's Declaration ¶7.)  After the amendment, Mr. Zweigle continued providing services from his California home office.

Zweigle's relationship terminated with Switchback in May 2014.  Since leaving, he has not solicited or transacted any business in Ohio.  Zweigle's current employer is located in California and provides services in the western United States. His current employer has not solicited or transacted any business in Ohio during the time Zweigle has worked there. (See Defendant's Declaration ¶9.) In short, Mr. Zweigle has not traveled to Ohio since December 2012. Since leaving Switchback he has not solicited or transacted any business in the State of Ohio. Throughout Zweigle's career, the only contacts he had to Ohio were through his work at Switchback. (See Defendant's Declaration ¶10.)

It would be an overwhelming burden for Zweigle to have to litigate this matter in Ohio. As a relatively new employee of his employer, any time that he would need to spend away from California to deal with this case could jeopardize his employment. In addition, at his current salary, it would be financially disastrous if he needed to travel back and forth to and stay in Ohio for any duration of time during this litigation. (See Defendant's Declaration ¶11.)

III.   **LAW AND ARGUMENT**

    A.   **Switchback's Claims Against Zweigle Must Be Dismissed For Lack Of Personal Jurisdiction**

        1.   **Legal Standard on Motion to Dismiss for Lack of Personal Jurisdiction Under Fed. R. Civ. P. 12(b)(2).**

In order to determine whether personal jurisdiction over a particular defendant exists, a district court must apply the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment. *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991). The first step of the personal jurisdiction analysis requires the Court to apply the Ohio long-arm statute, Ohio Rev. Code Ann. § 2307.382, which confers jurisdiction as to a cause of action arising from a defendant's conduct. The second step of the personal jurisdiction analysis requires the Court to determine whether the exercise of personal jurisdiction comports with constitutional due process. The Sixth Circuit recognized two types of personal jurisdiction that comport with constitutional due process requirements: specific and general jurisdiction. *Air Products & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007) .

A defendant may move to dismiss for lack of personal jurisdiction.  See Fed. R. Civ. P. 12(b)(2).  "The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Schneider v. Hardesty* 669 F.3d 693, 697 (6th Cir. 2012) (citation omitted); *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). The plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.

8

*Theunissen, supra*, 935 F.2d at 1458. Once the prima facie case for jurisdiction is established, the burden shifts to the defendant to establish that jurisdiction is unreasonable.  *Burger King v. Rudzewicz*, 471 U.S. 462, 477-78, (1985). A defendant may not simply contest the factual allegations made by the plaintiff, but instead must demonstrate additional considerations which undermine the court's personal jurisdiction over the defendant to overcome the plaintiff's prima facie showing.  *Id.* at 476.

In this case, Plaintiff cannot meet its burden of demonstrating either specific or general personal jurisdiction over Zweigle in Ohio. Exercising personal jurisdiction over Zweigle would deprive him of his Fourteenth Amendment right to due process of the law because Zweigle lacks the requisite "minimum contacts" with the State of Ohio.

### B.      The Court Does Not Have General Personal Jurisdiction Over Zweigle Because He Does Not Maintain "Continuous and Systematic" Contacts With Ohio

General jurisdiction exists over a defendant who has "substantial" or "continuous and systematic" contacts with the forum state such that the assertion of personal jurisdiction over him is constitutionally fair even where the claims are unrelated to those contacts. *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002); see also *Nationwide Mut. Ins. Co. v. Tryg Intern. Ins. Co.*, Ltd. 91 F.3d 790, 793 (6th Cir. 1996) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)). For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (U.S. 2011). The two fundamental considerations in establishing domicile are residence in the state and intention to remain there permanently. *Stifel v. Hopkins* 477 F.2d 1116, 1127 (6th Cir. 1973).

Here, Zweigle's domicile is in California. He does not have any systematic or continuous contact with Ohio.  Zweigle's only contact with Ohio consisted of minimal travel to the state where he performed services for Switchback between late 2007 and 2014.  (See Defendant's Declaration

¶6.) Providing services and infrequent visits does not confer general jurisdiction over Zweigle in Ohio. Zweigle has not engaged in sufficient contacts with Ohio to trigger general personal jurisdiction.

### C.      The Court Does Not Have Specific Personal Jurisdiction Over Zweigle

Even where there is no general jurisdiction over a defendant, specific jurisdiction exists when there are sufficient minimum contacts with the forum state such that the assertion of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Am. Greetings Corp. v. Cohn* 839 F.2d 1164, 1166 (6th Cir. 1988); (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement,* 326 U.S. 310, 316 (1945)). The Sixth Circuit has applied a three-part test to determine whether a court has personal jurisdiction over a defendant in conformity with Ohio's long arm statute for specific jurisdiction:

(1) The non-resident defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Calphalon Corp. v. Rowlette* 228 F.3d 718, 721 (6th Cir. 2000) (citing *Southern Mach. Co. v. Mohasco Industries, Inc.* 401 F.2d 374, 381 (6th Cir. 1968)).

In assessing personal jurisdiction, courts look to the volitional conduct of the defendant, not to the conduct of others drawing it into the forum. This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts. *World-Wide Volkswagen Corp. v. Woodson* 444 U.S. 286, 295-97 (1980). There is a difference between what *World-Wide Volkswagen Corp.* calls a mere "collateral relation to the forum State," and the kind of substantial relationship with the forum state that invokes, by

design, "the benefits and protections of its laws." An understanding of this difference is important to the proper application of the "purposeful availment" test. *LAK, Inc. v. Deer Creek Enterprises* 885 F.2d 1293, 1300 (6th Cir. 1989).

Further, in *Calphalon*, a shareholder of a Minnesota-based corporation (Rowlette) and an Ohio corporation (Calphalon), entered into an agreement whereby Rowlette agreed to promote the sale of Calphalon's products and to develop sales plans for customers. During the term of the agreement, Rowlette corresponded with Calphalon in Ohio via telephone, fax, and mail, and made two physical visits to Ohio. *Calphalon Corp.*, *supra*, 228 F.3d at 720-21.

In holding that the Ohio Court lacked personal jurisdiction over Rowlette despite the existence of a contact, the Court considered the three-part test in established in *Southern Machine Co.*, *supra,* 401 F.2d at 381. Rowlette's phone, mail, and fax contact with Calphalon in Ohio and physical visits occurred solely because Calphalon chose to be headquartered in Ohio, not because Rowlette sought to further its business and create "continuous and substantial" consequences there. The court concluded that Rowlette's contacts with Ohio were too "fortuitous" or "attenuated" to support the exercise of jurisdiction because Rowlette's obligations under the agreement were to be performed outside of Ohio and because Rowlette was not seeking to exploit a market for Calphalon's products in Ohio. *Id.* at 722-24.

Here, Zweigle did not contact Ohio to create continuous or substantial contacts or consequences in the state.  Zweigle was not attempting to "exploit any market for its products" in the forum state, but rather had contact with Switchback merely because Switchback was based in Ohio. Both Zweigle personally and doing business as Design Services have no bank accounts or property in Ohio and are not incorporated in Ohio. Other than his relationship with Switchback, at no time did he or Design Services ever solicit or transact business in Ohio. (See Defendant's Declaration ¶8.)

11

Rather, Mr. Zweigle designed mechanics for Switchback from his home office in California.  Thus, Zweigle has not availed himself of the privileges of Ohio law.  His contacts are "purely fortuitous."

The second requirement, that the cause of action arose from Zweigle's activities in the forum state, also cannot be met in this case. As Switchback itself admits in its complaint, this action was brought "to stop Zweigle from continuing to deceptively take credit for Switchback's work, breaching his contract with Switchback, interfering with Switchback's existing and prospective economic advantages, and to obtain compensation for the harm that he has caused".  Complaint, ¶ 4. In other words, this complaint was brought to address Zweigle's conduct **since leaving Switchback**. However, as the declaration of Mr. Zweigle makes clear, he has not had any contact with Ohio since leaving Switchback.

As the gravamen of this lawsuit is Mr. Zweigle's conduct post-Switchback and Mr. Zweigle has not had any contact with Ohio since leaving Switchback, this second element cannot be satisfied. Indeed, even his conduct during his relationship with Switchback would not confer jurisdiction.  The activities Switchback is complaining about did not occur in or relate to Ohio.  As such, there cannot be specific jurisdiction over Mr. Zweigle.

The third element, that the defendant's acts or consequences have a substantial enough connection with Ohio to make the exercise of jurisdiction reasonable, also cannot be maintained for similar reasons.  That is, Mr. Zweigle's acts which are being complained of all occurred after the time Mr. Zweigle worked at Switchback and thus all post-date any contacts he had to Ohio.  The only involvement that Ohio has with his conduct is that an Ohio corporation is alleging it was affected by it.  If this were a sufficient basis to confer personal jurisdiction, this would be the exception that swallows the rule.  That is, anytime the consequences of an act allegedly harmed an Ohio resident, there would be personal jurisdiction.  Obviously, this is not the test for personal

12

jurisdiction and cannot be a basis for it in this instance.  For all these reasons, there cannot be specific personal jurisdiction over Mr. Zweigle in Ohio related to the conduct in this lawsuit.

> **D.      The Exercise of Personal Jurisdiction Over Zweigle Would Offend Traditional Notions of Fair Play and Substantial Justice**

In reaching the decision on fair play and substantial justice, the court must consider the factors identified by the Supreme Court. These include the burden on the defendant, the interest of the forum state in resolving the dispute, the plaintiff's interest in obtaining relief,  and the interest of other states in securing the most efficient resolutions for their controversies. *American Greetings Corp., supra,* 839 F.2d at1169-70.

The first factor, the burden on defendant, weighs heavily against exercising jurisdiction over Zweigle.  As a relatively new employee, any time Zweigle would need to spend away from California to deal with this case could jeopardize his employment. In addition, at his current salary, it would be financially disastrous if he was forced to travel back and forth to Ohio and stay for any duration of time during this litigation. (See Defendant's Declaration ¶11.)

Here, Plaintiff's interest in convenient and effective relief is relatively slight because the chances of Plaintiff's recovery will *not* be greatly diminished by forcing him to litigate in another forum. Switchback is a national company, which is part of a commercial conglomerate of three other corporations employing in excess of 20 people with gross revenues of more than $3,000,000 per year. The burden on Plaintiff is not so overwhelming as to foreclose pursuit of the lawsuit. There would be no undue hardship to plaintiff in litigating this matter in a more appropriate forum.

Lastly, considering the interests of the "several States," in addition to the forum State in the efficient judicial resolution of the dispute and the advancement of substantive policies, this Court must consider whether exercise in the forum state is reasonable, efficient and fair. *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cnty.*, 480 U.S. 102, 115, (1987). In the particular

case, litigating the dispute in Ohio would not be more efficient than other possible forums. Considering the serious burden on Zweigle to be forced into court in Ohio, outweighed by the minimal interest on the part of the Plaintiff or the forum state, exercise of jurisdiction in Ohio would be unreasonable and unfair.

For the foregoing reasons, Plaintiff has not adequately alleged that Zweigle has sufficient contacts with Ohio for personal jurisdiction, nor does Zweigle maintain sufficient minimum contacts with the State of Ohio sufficient to confer jurisdiction. However, if this Court does find that such minimum contacts exist, which Zweigle vehemently denies, the exercise of personal jurisdiction over Zweigle is still improper as it would offend traditional notions of fair play and substantial justice.

## IV.     CONCLUSION

For all the reasons discussed here, Mr. Zweigle prays the Court will dismiss this case for lack of personal jurisdiction.

Dated:  December 24, 2014                     McCORMICK, BARSTOW, SHEPPARD,
                                                          WAYTE & CARRUTH LLP


By:            S/ Douglas M. Beard
                  Douglas Beard, #0073759
                  Scripps Center, Suite 1050
                  312 Walnut Street
                  Cincinnati, OH 45202
                  Telephone: (513) 762-7520
                  Facsimile: (513) 762-7521
                  *douglas.beard@mccormickbarstow.com*
            Attorneys for Defendant John Zweigle, dba Design
                              Services

14

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)

My name is Douglas Beard.  I am one of the attorneys representing Defendant John Zweigle, dba Design Services in this action.  I certify, pursuant to Local Rule 7.1(f), that this action was assigned to the Court's standard docket on May 9, 2014 and that the memorandum in support of the present dispositive motion may not exceed twenty pages, and that the present memorandum in support does not exceed twenty pages.

S/ Douglas M. Beard

Douglas M. Beard

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing Memorandum was served via the Court's electronic filing system upon the following on this 24th day of December, 2014.

David T. Movius
Matthew J. Cavanagh
McDonald Hopkins, LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
dmovius@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

S/ Douglas M. Beard

Douglas M. Beard

3186349.1