UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Switchback Group, Inc., | ) | Case No. 5:14-cv-1022-JRA |
| | ) | |
| Plaintiff, | ) | Judge John R. Adams |
| | ) | |
| vs. | ) | |
| | ) | |
| John Zweigle, dba Design Services, | ) | |
| | ) | |
| Defendant. | ) | |

**Switchback's Opposition to Zweigle's Motion to Dismiss**

{5323709:}

## __Table of Contents__

Table Of Authorities ................................................................................ iii

Issue Statement ...................................................................................... v

Summary Of Argument .......................................................................... v

Background .............................................................................................. 1

    I.   Switchback ....................................................................................... 1

    II.  Switchback Retains Zweigle ............................................................ 2

    III. Zweigle Breaches His Contractual Obligations ............................ 4

    IV. This Case ....................................................................................... 6

Law and Argument ................................................................................. 7

    I.   Switchback Need Only Make a *Prima Facie* Jurisdictional Showing ....................... 7

    II.  At Least Three Subsections of Ohio's Long-Arm Statute Are Met ......................... 7

        A. Section 2307.382(A)(1) of the Long-Arm Statute Is Satisfied ............................. 8

            1.  Zweigle Transacted Business in Ohio ............................................. 8

            2.  Switchback's Claims Arise Out of Zweigle's Ohio Transactions .................. 9

        B. Section 2307.382(A)(2) of the Long-Arm Statute Is Satisfied ............................ 11

        C. Section 2307.382(A)(6) of the Long-Arm Statute Is Satisfied ............................ 11

    III Exercising Personal Jurisdiction Does
        Not Violate Zweigle's Due Process Rights ................................................. 12

        A. Zweigle Purposefully Availed Himself of Ohio and Its Laws ............................ 12

        B. Switchback's Suit Arises from Zweigle's Ohio Contacts ................................. 15

        C. Exercising Personal Jurisdiction over Zweigle Is Reasonable ........................... 16

    IV. The Court Has Jurisdiction Over Zweigle's In- and Post-Contract Conduct .......... 17

    Conclusion ........................................................................................ 18

# Table of Authorities

## Cases

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544 (6th Cir. 2007) ....................7

*Bath & Body Works, Inc. v. Wal-Mart Stores, Inc.*,
No. C-2-99-1190, 2000 WL 1810478 (S.D. Ohio Sept. 12, 2000) ........................................... 16

*Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472 (6th Cir. 2013) .................13

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) .............................. iv, 8, 12, 13, 16, 17, 18

*Calder v. Jones*, 465 U.S. 783 (1984) .................................................................................14

*Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000) ....................................................15

*Cole v. Mileti*, 133 F.3d 433 (6th Cir. 1998) ...........................................................................15

*CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996) ........................................7, 12, 16

*Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269 (6th Cir. 1998) ...............................................7

*Goldstein v. Christiansen*, 70 Ohio St. 3d 232 (1994) ..........................................................8

*In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 228 (6th Cir. 1972) .................9, 15

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ..............................................................12

*Kehoe Component Sales, Inc. v. Best Lighting Prods., Inc.*,
No. 2:08-cv-752, 2009 WL 2591757 (S.D. Ohio Aug. 19, 2009) ...................................... 14, 16

*Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73 (1990) ..............8

*Ohio, ex .rel. DeWine v. GMAC Mortgage LLC*,
No. 10CV2537, 2011 WL 1884543 (N.D. Ohio May 18, 2011) ...................................................8

*Smith v. GAF Corp.*, 583 F. Supp. 1101 (S.D. Ohio 1984) .......................................................17

*Worthington Metal Fabricators, LLC v. Burgess Steel Fabricators, LLC*,
No. 5:13-cv-2230, 2014 WL 4792796, at *3 (N.D. Ohio Sept. 24, 2014) ............................13, 16

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1199 (W.D. Pa. 1997) .........................14

**<u>Statutes</u>**

R.C. 2307.382 ................................................................................................................. 8-12

## Issue Statement

Whether this Court has personal jurisdiction over defendant John Zweigle, dba Design Services?

## Summary of Argument

In the landmark *Burger King* case, the U.S. Supreme Court held that a court has personal jurisdiction over an out-of-state individual who enters into a contract with a forum-based company that requires the individual to have ongoing contacts with the forum state. The high court found that, in such a case, personal jurisdiction exists not only as to contract claims, but also on tort claims aimed at conduct occurring after termination of the contract when, as here, that conduct arises out of the prior business relationship between the parties.

This Court has personal jurisdiction over Zweigle for the very same reasons as in *Burger King.* Zweigle entered into a contract with Switchback that he knew would require, and did require, him to have continuous contact with Ohio. Over a seven-year period, Zweigle's contacts included travelling to and performing services in Ohio at Switchback's and its customers' facilities, and communicating with Switchback and others in Ohio multiple times per day. Because all of Switchback's claims arise out that business relationship between the parties, this Court has personal jurisdiction over Zweigle. The Court should deny Zweigle's motion accordingly.

## Background

### I.    Switchback

Switchback Group, Inc. is a designer and manufacturer of sophisticated automated packaging systems headquartered in Richfield, Ohio. Switchback's packaging systems include a wide variety of cartoners, case packers, carton and trayformers, pouching/sachet machines, bottle and can labelers, carton closers and related systems. (Am. Compl. ¶¶ 1, 19.) Using computer-operated motors, conveyors and arms, Switchback's packaging systems automate the entire packaging process, allowing its customers to greatly reduce labor costs and speed up their manufacturing processes. (*Id.* ¶ 20.) Switchback's customers use its automated packaging systems to package and label a wide variety of goods, such as bottles, cans, food products, and automotive parts, in a wide variety of industries. (*Id.* ¶ 2.)

Switchback provides its customers "turnkey" service, with Switchback handling the entire process of designing, assembling, and then installing automated packaging systems in its customers' facilities, so that—at the end—its customers need only turn a key to start using Switchback's systems. (Am. Compl. ¶ 22.) Since its inception in 2004, all of Switchback's business operations have occurred in either Elyria or Richfield, Ohio, including management, accounting, purchasing, sales and, engineering. (Declaration of David Shepherd ¶ 4, att'd as Exhibit A.) Other than assuming the remaining term of a lease for a single building located in Jackson, Mississippi, in connection with its acquisition of an unrelated business in 2004, Switchback has not owned, leased or used any facilities outside of Ohio to conduct its business. (*Id.* ¶ 5.)

II.    **Switchback Retains Zweigle**

Around 2007, Switchback met Zweigle in California. (Am. Compl. ¶ 24.) At that time, Zweigle owned a business called MDG Packaging Solutions that was struggling for customers. (*Id.*) After discussing several different business arrangements, Switchback retained Zweigle to perform design and related services as an independent contractor. (*Id.* ¶ 25; Shepherd Decl. ¶ 6.) Under the terms of his agreement, Zweigle agreed to wind down his MDG Packaging Solutions business after he completed the remaining work in progress, after which he was to work exclusively for Switchback on a full-time basis as a mechanical designer. (Am. Compl. ¶ 26.) In addition to his primary responsibility for designing and engineering automated packaging systems for Switchback, Zweigle responsibilities also included support, sales and marketing functions. (*Id.*) Zweigle further agreed that, going forward, all of his design work, drawings, and customer and business records would be the property of Switchback and would be maintained at Switchback's Ohio offices. (*Id.* ¶ 27.)

In exchange for Zweigle's agreement to wind down MDG Packaging Solutions to work exclusively for it on a full-time basis, Switchback agreed to pay Zweigle a retention of $80,000 per year, plus two percent of the net sales price for products he designed. (Am. Compl. ¶ 28.) Switchback also agreed to pay for Zweigle's cell phone and one-half of Zweigle's family medical insurance premiums, and to reimburse any travel and other incidental expenses that Zweigle incurred while working for Switchback. (*Id.*)

During his seven-year working relationship with Switchback, Zweigle travelled to, physically visited and provided services at Switchback's Richfield, Ohio, facility multiple

times per year. (Shepherd Decl. ¶ 9; Declaration of John Zweigle, ECF#12-1, ¶ 6.) While in Richfield, Zweigle met with Switchback's customers and worked on many projects for them, including:

- cartoners for NextFoods and Kellog Snacks in 2008;

- a trayformer for Mars Snack Foods in 2009;

- a case backer for Idahoan Foods and a cartoner for Quinoa Corp. in 2010;

- a case packer for Hollandia Produce in 2011;

- case packers for Gregory Packaging and JX Nippon Oil and cartoners for OPI Products, Farouk Systems, USG and Idahoan Foods in 2012; and,

- a cartoner for Farouk Systems in 2013.

(*Id.*) Zweigle also provided services on Switchback's behalf to a number of companies located or with facilities in Ohio, including:

- visiting and providing services at Toft Dairy's Sandusky, Ohio, facility;

- meeting with representatives of Morse Products of Canton, Ohio, at Switchback's Richfield facility;

- meeting with representatives of Nestle Corporation and Switchback's Richfield facility regarding its Solon, Ohio, facility;

- providing training services at Foxtail Foods with other Switchback personnel at its facility near Cincinnati, Ohio;

- meeting with representatives of Innotech Products at its facility near Cincinnati, Ohio;

{5323709:}                                         3

- meeting with representatives of Toledo-based Frostbite Novelty at Switchback's Richfield facility; and

- designing and helping to assemble systems for USG Corporation and Amish Pie Company at Switchback's Richfield facility for use at their respective Ohio facilities.

(*Id.* ¶ 10.) Zweigle also remained in contact with Ohio even when he was not physically present, communicating with Switchback personnel and its vendors and customers located in Ohio by email and telephone multiple times per day. (*Id.* ¶¶ 11-12.) Zweigle also remotely accessed and used Switchback's computer servers located in Richfield on almost a daily basis to store and work on computer files, including word processing and computer-aided design files. (*Id.* ¶ 13.) For this and his other work, Switchback paid Zweigle by checks drawn on an account with Huntington Bank in Ohio. (*Id.* ¶ 14.)

## III.    __Zweigle Breaches His Contractual Obligations__

After Zweigle started, Switchback discovered that he was breaching the terms of his agreement with Switchback by, among other things, competing with Switchback by performing design and development work for third parties and usurping business opportunities for himself that rightfully belonged to Switchback. (Am. Compl. ¶ 29; Shepherd Decl. ¶¶ 15-17.) Rather than ending its engagement of Zweigle immediately, Switchback gave him another chance. (Am. Compl. ¶ 30.) Following an in-person meeting at Switchback's Ohio facility in 2012, the parties reaffirmed their existing agreement, with several notable changes. (*Id.*; Shepherd Decl. ¶¶ 7, 9; Zweigle Decl. ¶ 7.) In particular, Zweigle agreed to specifically notify Switchback of any additional business

opportunities, and Switchback agreed to increase his annual retention to $115,000 in exchange for eliminating his bonus. (Am. Compl. ¶ 30.)

Since then, Switchback learned that Zweigle had continued to breach the terms of his agreement with Switchback. (Am. Compl. ¶ 29; Shepherd Decl. ¶¶ 15-17.) For example, Switchback has learned that Zweigle had not worked exclusively for Switchback but instead competed head-to-head with Switchback offering and selling competing products and services to existing Switchback customers. (Am. Compl. ¶ 32; Shepherd Decl. ¶ 15.) Zweigle also did not notify Switchback of all additional business opportunities as he had promised, but instead usurped, or attempted to usurp, those business opportunities for himself and others without disclosing them to Switchback. (*Id.* ¶ 33; Shepherd Decl. ¶ 15.)

Zweigle also has misrepresented (and continues to misrepresent) to the market, and to potential and actual Switchback customers, that he designed, built, and installed various automated packaging systems on behalf of "Design Services," when in reality Switchback designed, built and installed the automated packaging systems in question for its customers out of its Richfield, Ohio, facility. (Am. Compl. ¶ 34; Shepherd Decl. ¶ 16.) For example, Zweigle posted pictures of automated packaging systems that Switchback designed, built and installed for its customers on his personal website at www.design-serv.com, thereby falsely and deceptively representing that Zweigle—and not Switchback—was chosen by each of the customers, and that he made the sales to those customers, warrantied the depicted automated packaging systems, and designed, built, and installed them. (Am. Compl. ¶ 35; Shepherd Decl. ¶ 17.)

As another example, Zweigle posted numerous videos on both his website and on YouTube that show the operation of automated packaging systems that Switchback designed, built and installed for its customers, thereby falsely and deceptively representing that Zweigle—and not Switchback—was chosen by each of the customers, and that he made the sales to those customers, warrantied the depicted automated packaging systems, and designed, built, and installed them. (Am. Compl. ¶ 36; Shepherd Decl. ¶ 17.) Zweigle also has distributed sales and marketing collateral that copy, in whole or in part, and are otherwise confusingly similar to, the sales and marketing collateral Switchback uses to market, sell and promote its goods and services in ways that create a significant likelihood that customers will be confused as to the affiliation, connection, and association of Zweigle with Switchback and the origin, sponsorship, and approval of his goods, services and commercial activities. (Am. Compl. ¶ 37; Shepherd Decl. ¶¶ 16-17.)

## IV.  **This Case**

Switchback filed this action against Zweigle seeking relief from Zweigle's contractual breaches and tortious conduct—acts that occurred both during and after his relationship with Switchback. Despite maintaining and profiting from a seven-year, active relationship with Switchback, Zweigle now says this Court has no personal jurisdiction over him and has moved to dismiss on that ground. As explained below, the Court should deny his motion.

<u>**Law and Argument**</u>

**I.**      <u>**Switchback Need Only Make A *Prima Facie* Jurisdictional Showing**</u>

Because there has been no evidentiary hearing, Switchback "need only make a prima facie showing of jurisdiction" to defeat Zweigle's motion. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). That showing is a "relatively slight" burden. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). In deciding whether Switchback has made that slight showing, the Court "[m]ust consider the pleadings and affidavits in a light most favorable to [Switchback]." *CompuServe*, 89 F.3d at 1262. Thus, any disagreements between the pleadings and declarations are resolved in Switchback's favor. *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1271-72 (6th Cir. 1998); *see also CompuServe*, 89 F.3d at 1262 ("court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal").

Applying those standards, this Court has personal jurisdiction when: (i) conferred by Ohio's long-arm statute; and (ii) exercising jurisdiction is consistent with due process of law. *CompuServe*, 89 F.3d at 1262. As explained below, Switchback has made than a *prima facie* showing as to both elements.

**II.**      <u>**At Least Three Subsections Of Ohio's Long-Arm Statute Are Met**</u>

Zweigle's motion does not dispute that personal jurisdiction exists under Ohio's long-arm statute and, consequently, only addresses the second part of the analysis: due-process. As shown below, personal jurisdiction exists under at least three separate subparts of Ohio's long-arm statute.

A.      **Section 2307.382(A)(1) Of The Long-Arm Statute Is Satisfied**

     1.      **Zweigle Transacted Business in Ohio**

Section 2307.382(A)(1) of Ohio's long-arm statute confers jurisdiction "as to a cause of action arising from the person's . . . [t]ransacting any business in this state." R.C. 2307.382(A)(1). Section 2307.382(A)(1) is "very broadly worded" and permits jurisdiction over non-residents who transact "any" business in Ohio. *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 75 (1990). In the digital age, where business is often transacted by phone, e-mail, and Internet, a defendant need not be physically in Ohio to transact business here. *Ohi, ex rel. DeWine v. GMAC Mortgage LLC*, No. 10CV2537, 2011 WL 1884543, at *1 (N.D. Ohio May 18, 2011) (citing *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 236 (1994)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) ("it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted").

Here, Zweigle has repeatedly transacted business in Ohio by at least: (i) negotiating and agreeing to a new agreement with Switchback in 2012 while he was physically present in Switchback's Richfield, Ohio, facility; (ii) regularly visiting Ohio on numerous occasions to perform services for Switchback, both at its Richfield facility and on-site at customers facilities throughout the state; (iii) exchanging emails, phone calls, and letters with Switchback personnel and its vendors and customers in Ohio in the performance of his services contracts; (iv) providing design services for systems that he

knew would be manufactured in accordance with his designs at Switchback's Ohio facility and, in some cases, installed in the Ohio buildings of Switchback customers; (v) remotely accessing and using Switchback's computer servers to work on and store word processing and computer-aided design ("CAD") files; and (vi) receiving funds drawn on Switchback's Ohio bank account by cashing checks that Switchback signed and sent to him from Ohio. (Shepherd Decl. ¶¶ 7, 9-14.)

### 2.   Switchback's Claims Arise Out of Zweigle's Ohio Transactions

And all of Switchback's claims arise out Zweigle's business transactions in Ohio because all of the claims arise out of the contractual relationships between the parties.

Switchback's breach of contract claim (Count Five) is based on the parties' contracts, as any breach claim must be. *See In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 228, 229 (6th Cir. 1972) ("entering of a contractual relationship with an Ohio corporation necessarily is the very soil from which the action for breach grew"). Switchback's tortious interference claims (Count Six) are based, at least in part, on: (i) the parties' contracts requiring Zweigle to work "exclusively" for Switchback; and (ii) Zweigle's knowledge of Switchback's actual and prospective contractual relationships, which he acquired through performing services for Switchback under the parties' contracts. (*See* Am. Comp. ¶¶ 68, 69.) Switchback's declaratory judgment claim (Count Seven) seeks a declaration of whether the contracts between the parties constituted an independent contractor or employment relationship. (*Id.* ¶¶ 75-79.) Likewise, Switchback's unfair competition and related claims (Counts One to Four) all arise out of the contracts because they are based largely on Zweigle falsely taking ownership of and

credit for work that he performed under contract for Switchback—work that was done by Switchback. (*Id.* ¶¶ 44-59.)

And the contracts between Zweigle and Switchback—from which all of Switchback's claims arise—both constituted, contemplated, required, and ultimately resulted in business transactions in Ohio. Although not consummated in Ohio, the original 2007 agreement was with an Ohio-based business (*i.e.*, Switchback), required Zweigle to continuously communicate with Switchback in Ohio, to access and use Switchback's computer systems in Ohio, to perform work for Switchback's Ohio customers, and to physically visit Switchback several times per year (by his own admission). The 2012 amendment not only required and contemplated all of those same types of Ohio transactions, but it was actually negotiated and agreed to by Zweigle while he was physically present at Switchback's facility in Ohio. Thus, this case necessarily arises out of Zweigle transacting business in Ohio.

Indeed, Zweigle's own opposition brief admits as much. He states: "[o]ther than his relationship with Switchback, at no time did he or Design Services ever solicit or transact business in Ohio." (Br. in Opp. at 11.) Thus, Zweigle admits that, through his relationship with Switchback, he <u>did</u> solicit and transact business in Ohio. Moreover, in the declaration Zweigle submitted in support of his motion, he admits that he "travelled to Switchback's Ohio facility on average approximately 2-3 times per year to work on Switchback machines" during his engagement. (Zweigle Dec. ¶ 6.) As this entire case arises out of Zweigle's "relationship with Switchback," Zweigle admits that personal jurisdiction exists under subpart (A)(1) of Ohio's long-arm statute. This Court should

rule accordingly based on Zweigle's admission and the showing that Switchback makes here and in its amended complaint.

**B.      Section 2307.382(A)(2) Of The Long-Arm Statute Is Satisfied**

Section 2307.382(A)(2) of Ohio's long-arm statute confers jurisdiction "as to a cause of action arising from the person's . . . [c]ontracting to supply services or goods in this state." R.C. 2307.382(A)(2). As explained in the preceding section, Zweigle contracted to provide services in Ohio by entering into the 2007 contract and the 2012 amendment, and he provided those design services in Ohio throughout the course of his contractual relationship with Switchback. (*See supra* pp. 8-9.) And, as also explained above, this case arises entirely out of that contractual relationship. (*See supra* pp. 9-10.) Thus, personal jurisdiction further exists under subpart (A)(2) of the long-arm statute.

**C.      Section 2307.382(A)(6) Of The Long-Arm Statute Is Satisfied**

Section 2307.382(A)(6) of Ohio's long-arm statute confers jurisdiction "as to a cause of action arising from the person's . . . [c]ausing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state." R.C. 2307.382(A)(6).

The tortious injuries caused by Zweigle's deception, unfair competition, and other wrongful acts cause tortious injury in this state because the injured party, Switchback, resides here. (Shepherd Decl. ¶ 2.) And Switchback has made at least a *prima facie* showing that Zweigle intended to harm Switchback here in Ohio based on its allegations

of intentionality and based on the undisputed fact that Zweigle knew that Switchback resides in Ohio. (*Id.* ¶¶ 15-17; Am. Compl. ¶¶ 10-17; Zweigle Decl. ¶ 6-7.)

In sum, Ohio's long-arm statute is satisfied under subsections 2307.382(A)(1), (A)(2), (A)(6), or any combination thereof.

## III.    Exercising Personal Jurisdiction Does Not Violate Zweigle's Due Process Rights

The Due Process clause allows a court to exercise jurisdiction over a non-resident who has "minimum contacts" with a state such that the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Specific jurisdiction may be asserted under the Due Process clause where: (1) the non-resident defendant purposefully avails himself of the privilege of conducting activities in the forum state; (2) the cause of action arose from the defendant's activities in the forum state; and (3) the exercise of jurisdiction is reasonable. *CompuServe*, 89 F.3d at 1263. All three factors are met in this case.

## A.    Zweigle Purposefully Availed Himself of Ohio and Its Laws

"[W]here the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). "[P]urposeful availment is something akin to a deliberate undertaking to do or cause an act or thing to be done in the [forum state] or conduct which can be properly regarded

as a prime generating cause of the effects resulting in [the forum state], something more than a passive availment of [the forum state's opportunities]." *Worthington Metal Fabricators, LLC v. Burgess Steel Fabricators, LLC*, No. 5:13-cv-2230, 2014 WL 4792796, at *3 (N.D. Ohio Sept. 24, 2014), *quoting Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 478 (6th Cir. 2013). Zweigle has purposefully availed himself of Ohio law by entering into a contract with Switchback—an Ohio business—that would require him to have repeated and ongoing contacts with Ohio and by his almost-constant contact with Ohio throughout his entire relationship with Switchback.

The facts here are very similar to those in the U.S. Supreme Court's *Burger King* decision, in which the high court held that a Florida federal court had personal jurisdiction over an individual, Rudzewicz, residing in Michigan. There, Burger King sued an individual franchisee, Rudzewicz, alleging that he had breached the franchise agreement and tortiously infringed Burger King's trademarks by continuing to operate a "Burger King" restaurant in Michigan after termination of the franchise agreement. *Burger King*, 471 U.S. at 468-69. The high court reversed the Eleventh Circuit Court of Appeals, and held that Rudzewicz had purposefully availed himself of the Florida forum.

Key to the court's decision was that Rudzewicz had not only contracted with a Florida-headquartered business (*i.e.*, Burger King), but that the quality and nature of that contractual relationship would result in (and did result in) continuing and wide-reaching contacts with Burger King in Florida. *Id.* at 479-80. The deliberate decision by Rudzewicz to enter into that relationship constituted purposeful availment, and was not "random," "fortuitous," or "attenuated." *Id.* at 480. Rudzewicz further purposefully

availed himself of the Florida forum by continuing to use Burger King's trademarks and confidential business information in Michigan after his termination, as those actions caused foreseeable tortious harm to Burger King in Florida.

Like Rudzewicz, Zweigle entered into contracts with an out-of-state business that he knew would result in continuing and wide-reaching contacts with that business in that business's home state, and he knowingly travelled to Ohio and maintained extensive contact with this state under those contracts. And, like Rudzewicz, Zweigle intentionally used the intellectual property of that business post-termination, knowing that such conduct would cause tortious harm to Switchback in its home state. *See also Calder v. Jones*, 465 U.S. 783, 788-89 (1984) (noting that defendants should "reasonably anticipate" being haled into state where it intentionally caused tortious injury); *see also Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1199 (W.D. Pa. 1997) (finding purposeful availment where, among other things, alleged trademark infringement caused tortious injury in forum state). Indeed, the case for purposeful availment is even stronger here because, unlike Rudzewich, who had never visited Burger King in Florida, Zweigle admits he visited Switchback in Ohio to negotiate the parties' second agreement and came to Ohio several times per year between 2007 and 2014 to perform services for Switchback at its Richfield facility and at customer facilities located throughout the state. (*See supra* pp. 2-4.)

That Zweigle purposefully availed himself of Ohio law is consistent with *Burger King* and other decisions by and in the Sixth Circuit. *See, e.g., Kehoe Component Sales, Inc. v. Best Lighting Prods., Inc.*, No. 2:08-cv-752, 2009 WL 2591757, at *6 (S.D. Ohio Aug.

19, 2009) (finding purposeful availment as to individual that had "traveled to Ohio several times to meet with" opposing party, "transacted business by negotiating and executing a contract via telephone calls and e-mails to an Ohio resident," and knew that out-of-state tort actions would  cause injuries to Ohio business); *In-Flight*, 466 F.2d at 235 (defendant negotiated contract for manufacture of goods with a firm it knew to be in the forum state); *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (purposeful availment exists where the "nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to a resident of the forum state").

The *Calphalon* case, on which Zweigle heavily relies, is readily distinguishable. *See Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000). There, the defendants contracted with Calphalon only to obtain business in Minnesota, Iowa, South Dakota, North Dakota, and Nebraska, and they did not sell any goods to Ohio businesses. *Id.* at 722-23. In contrast, Zweigle actually sold and provided design services to an Ohio business (Switchback), performed paid work for Switchback's Ohio customers—including at their facilities in Ohio—under his contracts with Switchback, and he delivered designs to Ohio, knowing such designs would be used to manufacture systems at Switchback's Ohio facility. (*See supra* pp. 2-4.) Those type of Ohio contacts are more than sufficient to trigger personal jurisdiction here.

**B.**   **Switchback's Suit Arises From Zweigle's Ohio Contacts**

As explained above with respect to the long-arm statute, Switchback has made a more than *prima facie* showing that its cause of action arose from Zweigle's Ohio contacts – the second part of the minimum contacts test. (*Supra* pp. 9-10.)

C.     **Exercising Personal Jurisdiction Over Zweigle Is Reasonable**

When the defendant has sufficient contacts with and the cause of action arises from the defendant's activity in the forum state, there is a presumption that exercising jurisdiction over a defendant is fair. *CompuServe*, 89 F.3d at 1268. Having demonstrated that Zweigle has minimum contacts with Ohio that gave rise to Switcback's cause of action, the exercise of jurisdiction over Zweigle is presumptively reasonable.

Moreover, by deliberately entering into an independent contractor relationship with an Ohio business, knowing that such a relationship would cause him to have continuous emails, phone calls, and physical trips into Ohio, Zweigle should reasonably anticipate being haled into court in Ohio. *See Burger King*, 471 U.S. at 480; *Worthington Metal*, 2014 WL 4792796, at *3-4. Zweigle's status as a willing "seller" of services to an Ohio business, as opposed to being a buyer, heightens the reasonableness of subjecting him to this Court's jurisdiction. *See Kehoe Component*, 2009 WL 2591757, at *7 (for one "in the position of the seller of services, . . . courts have found . . . an increased fairness for maintaining jurisdiction").

Additionally, Ohio has a strong interest in resolving a dispute involving harm to an Ohio company such as Switchbackj and discouraging out-of-state defendants from causing tortious harm to Ohio businesses. *See CompuServe*, 89 F.3d at 1268; *Bath & Body Works, Inc. v. Wal-Mart Stores, Inc.*, No. C-2-99-1190, 2000 WL 1810478, at *9 (S.D. Ohio Sept. 12, 2000)

Furthermore, because modern advancements have made it easier and less expensive to travel and communicate, it is usually not unreasonable to require a

defendant to defend himself in a different state. *Smith v. GAF Corp.*, 583 F. Supp. 1101, 1104 (S.D. Ohio 1984) ("Moreover, modern transportation and communication have made it economically feasible and much less burdensome for a defendant corporation to defend itself in a state where it engages in economic activity.") Indeed, the fact that Zweigle was able to physically travel to Ohio several times per year for multiple-day visits while working for Switchback bolster the reasonableness of subjecting him to this Court's jurisdiction, and belies his conclusory argument that litigating in Ohio would be an "overwhelming burden" on him. *See Burger* King, 471 U.S. at 476 ("[T]erritorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suite there...."). That is especially true because: (a) this litigation should require only one or two visits to Ohio, and that's only if the case goes to trial; and (b) Zweigle has Ohio-based counsel, in addition to his California attorney. The exercise of personal jurisdiction over Zweigle therefore is reasonable.

## IV.  **The Court Has Jurisdiction Over Zweigle's In- and Post-Contract Conduct**

According to Zweigle, this Court has no personal jurisdiction because Switchback's complaint "was brought to address Zweigle's conduct <u>since leaving Switchback</u>," and Zweigle "has not had any contact with Ohio since leaving Switchback." (Br. In Opp. 12 (emphasis in original).) Zweigle's theory suffers from at least two fatal flaws. First, Switchback's claims are directed to Zweigle's conduct both while he was working for Switchback and afterward. For example, Switchback's breach of contract and tortious interference claims are based, at least in part, on Zweigle breaching his

obligation to work exclusively for Switchback during the term of their agreement. So Zweigle's theory is based on a false premise.

Second, Zweigle's post-termination conduct, such as his passing off Switchback's work as his own, also occurred during the term of his contract with Switchback. (*See, e.g.,* Am. Compl. ¶¶ 29-43.) And in any event, his post-termination conduct arises out of his contractual relationship with Switchback for the reasons discussed above. Zweigle's post-termination conduct, therefore, triggers personal jurisdiction in the same way that Rudzewicz's post-termination conduct in Michigan subjected him to personal jurisdiction in Florida in the *Burger King* case. Finally, Zweigle's post-termination conduct subjects him to personal jurisdiction in Ohio because, like Rudzewicz in *Burger King*, Zweigle knew that his out-of-state tortious conduct would cause harm to the forum-based plaintiff.

The Court therefore should not credit Zweigle's attempt to avoid this Court's personal jurisdiction over him by creating a distinction that does not exist between his actionable conduct during his contractual relationship with Switchback and his actionable conduct after Switchback terminated that relationship.

## <u>Conclusion</u>

For the foregoing reasons, the Court should deny Zweigle's motion to dismiss.

Respectfully submitted,

Dated:  January 26, 2015            s/ Matthew J. Cavanagh     
David T. Movius (OH 0070132)
Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400  | f 216.348.5474
    *dmovius@mcdonaldhopkins.com*
    *mcavanagh@mcdonaldhopkins.com*

*Counsel for Switchback Group, Inc.*

<u>Certificate of Service</u>

I hereby certify that on January 26, 2015, a copy of the foregoing **Switchback's Opposition to Zweigle's Motion to Dismiss** was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system.

  s/ Matthew J. Cavanagh       

*Counsel for Switchback Group, Inc.*

{5323709:}

L.R. 7.1(f) Certification

In accordance with Local Rule 7.1(f), I hereby certify that this case is on the standard track and that the foregoing **Switchback's Opposition to Zweigle's Motion to Dismiss** complies with the applicable page limitation of 20 pages.


  s/ Matthew J. Cavanagh
*Counsel for Switchback Group, Inc.*